GONZÁLEZ *v.* MÉNDEZ ET AL.

## APPEAL from the District Court of Humacao.

No. 101.—Decided March 31, 1905.

PARTNERSHIP—RIGHTS OF PARTNERS TO THE PROPERTY OF THE FIRM.—The fact that a partnership firm is the owner of certain real property is no legal reason why a partner therein should be considered as a co-owner of such real property, although he may have an interest in the partnership firm, which he may transfer to another person with the consent of the other partners.

ID.—If, in accordance with the foregoing doctrine, a partner is not a co-owner or participant in the property of every description belonging to the partnership firm, it is obvious that upon his death he cannot transmit to his heirs a co-ownership in such property.

ID.—ALIENATION OF THE PROPERTY OF MINORS—ASSIGNMENT OF RIGHTS.—In this case the plaintiff, being a minor, his mother and his legal representative, assigned and conveyed to a partnership the co-ownership participation and all the rights and actions pertaining to her minor children in the property of the firm as the heir of one of the partners without a liquidation or partition of the property of the said firm having been previously made and without the assets belonging to the said heir having been determined or fixed; *it was* held that the contract so executed was a conveyance of rights and actions, which cannot be qualified as rights of ownership or real rights in specific real property, and in virtue thereof such contract does not fall within the provisions of article 164 of the former Civil Code, it being perfectly valid and effectual.

ID.—COMMERCIAL INSTRUMENTS—LIQUIDATION OF PARTNERSHIP.—Articles 50, 234 and 297 of the Code of Commerce are not applicable to the contract referred to in the foregoing paragraph, since that contract is not a commercial instrument and constitutes in itself an act which is independent of the liquidation of the firm, which is consummated by the collection of credits, payments of debts, and the transaction of pending business.

ID.—PROPERTY, REAL AND PERSONAL.—The provisions of article 2010 of the former Law of Civil Procedure were circumscribed, in so far as they relate to the parents of minors, by article 164 of the former Civil Code, in their application to real property, among which are included real rights of every character which may affect the same, and from which are excluded all other properties to which article 2010, aforesaid, refers.

ID.—CONSTRUCTION OF LAWS—PROVISIONS OF A PROHIBITORY CHARACTER.—Provisions of a prohibitory character, such as those contained in article 164 of the former Civil Code, cannot be construed in an extensive sense, but only in a restrictive sense in harmony with the rules of construction: *"favorabilia sunt amplianda et odiosa restringenda; é inclusio unius est exclusio alterius."*

ID.—The provisions of article 2010 of the former Law of Civil Procedure and 164 of the former Civil Code are contradictory and incompatible, and therefore the provisions of the former must be deemed to have been repealed by the latter which was subsequently approved.

ID.—EFFECT OF PATRIA POTESTAS WITH RESPECT TO THE PROPERTY OF CHILDREN.—
In order to determine the *patria potestas* with respect to the property of their children, the parents must follow the provisions of the Civil Code and not those of the former Law of Civil Procedure.

The facts are stated in the opinion.

Mr. *Hernández López*, for appellant.

Mr. *Tirado*, for respondent.

MR. JUSTICE HERNÁNDEZ delivered the opinion of the court.

By public instrument number 177, executed in the town of Yabucoa under date of September 21, 1891, before Notary Marcelino Estevánez Nanclárez, a regular general partnership, with its domicil in said town, was entered into between Domingo González y González, Jacinto Gómez Sierra, Manuel Méndez Rodríguez, and Juan Antonio Ramón and Manuel Méndez Agodilla y Rodríguez, the last two represented by José Rodríguez de las Albas, and to this partnership, which was to engage in the purchase and sale at wholesale and retail of merchandise, provisions, products of the country and any other legitimate commercial goods, and which was to do business under the firm name of González, Méndez & Co., the three first named being the managing partners thereof, Domingo González contributed 48,620.87 *pesos,* Jacinto Gómez 8,604.26 *pesos,* Manuel Méndez 841.46 *pesos,* and Juan Antonio Ramón and Manuel Méndez Agodilla 49,860.85 *pesos,* such contributions making a total of 107,927.44 *pesos* of the money then current, consisting of merchandise, property and stock on hand which had belonged to them in the firm which had been doing business in said town under the same firm name, of the liquidation of which the new firm assumed charge. Among other agreements it was stipulated that the new partnership should continue in existence for a term of two years from the first day of said September, to expire on August 31, 1893; and that if any of the partners should die during this period, the partnership to be continued until the end of such term with the heirs of the partner or partners who had died, said heirs acquiring the same rights as their predecessors

in interest had, except with reference to the management or administration thereof. By public instrument No. 186 of August 9, 1893, the firm of González, Méndez & Co. was extended for another year, under the same agreements and stipulations which governed its constitution; and by another public instrument, No. 185, of August 25, 1894, the period was extended in the same manner with the additional stipulations therein set forth, for another year, to expire on August 31, 1905, the parties in interest agreeing that if during the last month of said term any of the partners should not express a desire to withdraw from the partnership, the term of duration thereof should be considered as extended, without the necessity of new articles of partnership, for another year, expiring on August 31, 1896. By the last instrument the said partnership was modified on account of Manuel García Fernández having entered it as an industrial partner.

Domingo González died on March 26, 1895, leaving a closed will which he had executed on the 11th of the same month, which was protocoled by judicial order in the notarial office of Humacao, on the 30th of said month of March; in this will González recognized Carmen Resto as a natural daughter, born in 1882, enumerating among his property all his share at the time of his death from any source in the commercial firm of González, Méndez & Co., of which he was a managing partner, constituting as his sole and universal heirs his legitimate mother, Vicenta González, and his said acknowledged natural daughter, in equal parts, and appointing as joint executors his partner Jacinto Gómez Sierra, Andrés Antelo y Antelo, and Jaime Bagué Pujals.

On June 28, 1895, the executor Jacinto Gómez Sierra and Petrona Resto, the mother of Carmen González Resto, a minor, proceeded by common agreement to make a general inventory and appraisal of the property left by Domingo González at his death, and they declared in a private document, signed by them and witnessed by Gregorio Berríos and

Juan Ayuso, that the term of duration of the commercial firm of González, Méndez & Co., of which firm Domingo González had been a managing partner, not having terminated as yet, and it being therefore impossible to determine exactly the amount or share of said Domingo in said firm on the date indicated, such amount was conservatively fixed at 37,500 *pesos,* subject to the amount which might appear upon the termination or liquidation of the said firm. To this sum was to be added the value of twenty-five shares of the Banco Territorial y Agrícola de Puerto Rico, belonging to González, for which he had paid 1,450 *pesos,* which item added to the former gives a total of 38,950 *pesos.*

Under the said inventory and appraisal, Jacinto Gómez Sierra and Petrona Resto, as the mother of the minor Carmen González Resto, proceeded on the same date, June 28, 1895, to make a provisional liquidation of the estate inventoried in order to make the payment of the property taxes due by reason of the transfer of the inheritance, and reserving a modification of the liquidation, if it became necessary by reason of the result of the liquidation of the firm of González, Méndez & Co., they stated in a private document, signed by both, that the estate inventoried amounted to 38,950 *pesos,* and as 1,000 *pesos* was to be deducted therefrom, being the amount of a bequest made by González to the minor, Leonor Martínez, there remained to be divided between the heirs, Vicenta González and Cármen González Resto, 37,950 *pesos,* the share of each being, according to the will of the testator, 18,975 *pesos.*

In a letter of February 2, 1896, written by Andrés Antelo to Petrona Resto, he informed her that the share of Domingo González in the firm of González, Méndez & Co. amounted, on July 17th of the preceding year, when an inventory had been taken, to 67,252.43 *pesos.*

Under these circumstances, on June 19, 1896, Manuel Méndez Rodríguez, Jacinto Gómez Sierra, Manuel García Fer-

nández, Petrona Resto y Negrón, and Manuel Lomba Peña, Gómez and García in their own right, and Méndez in his own right and as the attorney in fact of his mother, María Rodríguez López and brother Juan and sister María Méndez Rodríguez, of whom María acted in her own right and on behalf of her minor children Ceferino, José and another José Méndez Rodríguez, Petrona, as the legal representative of her minor daughter, Cármen González Resto, who was under her parental authority, and Lomba, as the attorney-in-fact of Vicenta González Alonso, executed in the town of Yabucoa, before Notary Marcelino Estebánez Nanclárez, an instrument relating to the withdrawal of a partner, with assignment of rights and actions and modification of a commercial partnership, which instrument contained the following clause among others:

"First. The parties hereto, Petrona Resto y Negrón and Manuel Lomba y Peña, the former in the name and on behalf of her minor daughter, Carmen González y Resto, under her parental authority, complying with the promise of sale made by deed No. 89, executed before me on May 20th last, and the latter on behalf and as the attorney-in-fact of Vicenta González y Alonso, by virtue of the power of attorney inserted, assign and convey to the said firm of González, Méndez & Co., represented by the partners thereof present, the co-ownership, share and all undivided rights and actions of every description in each and every kind of property, real and personal, chattels, property rights, and all other property of the said firm which may now or hereafter belong to their predecessors in interest the said Carmen González Resto and Vicenta González y Alonso, as the daughter and mother, respectively, and heirs of the deceased Domingo González y González, a managing partner of said firm, subrogating the latter to the place, degree and rights of the assignors for the stipulated price of 24,000 *pesos*, special national currency, an actual value which they fix by common agreement with the other partners as a just price, at which they estimate that the total share or pàrticipation of the deceased partner, González, in said firm may be reduced to upon the liquidation of the same, which sum or price the said Petrona and Manuel Lomba acknowledge this act in my presence and in the presence of the witnesses to have received to their entire satisfaction, in

the capacities stated, before the execution hereof, from the purchasing firm for the said consideration and amount, that is to say, 12,000 *pesos* each, in whose favor they execute a receipt by means of this instrument in the most formal and efficient manner.

"Second. The assignors bind their principals to answer for the legitimacy of the rights they assign and the capacity with which they make the assignment, as well as to the warranty, in accordance with the law; the acquiring firm shall enter upon the possession and shall be considered as the sole owner of the rights and property it acquires from and after this date, and without the necessity of any act other than this instrument, the parties present explaining that by virtue of the express agreements the assignment mentioned in the foregoing clause is understood to comprise the undivided co-ownership and share of Domingo González, as such partner, in all the real property and property rights now belonging to the said firm, as described in the corresponding deeds of purchase which will be presented in the registry of property of the district, together with the will of the testator, González, and a copy of this instrument, for the proper record.

"Third. In making the assignment referred to in the second clause it has been agreed among the parties hereto that the said firm is bound to make the payment of the legacy of 1,000 *pesos* bequeathed by the testator, Domingo González, in the fifth clause of his will, to the minor, Leonor Martínez, the natural daughter of Juana Martínez, as well as the income fixed from said legacy, to the payment of which the said firm binds itself, in the manner and under the terms provided in said will; and that the assignment is also considered to include the value of the 25 shares of the Banco Territorial y Agrícola of Porto Rico, which become the exclusive property of the assignee firm of González, Méndez & Co., which had belonged to the testator, González, and which appear in the second item in the general inventory of the property of the estate left by Domingo González, made by his executors under date of June 28, 1895, for the payment of the property taxes due the Treasury by reason of the transfer of said estate, such taxes having been paid in accordance with the respective provisional liquidations of June 28, 1895, it being the will of the persons interested that such provisional liquidations be considered as final, inasmuch as the estate therein declared of 38,950 *pesos*, instead of having been increased, has depreciated to the sum of 24,000 *pesos*, as shown in the first clause of this instrument.

"Fourth. By virtue of the assignment of rights and actions referred to in the first clause of this instrument, Carmen González Resto

and Vicenta González Alonso, as such heirs of the deceased partner, González, became separated from the said firm of González & Co., without any right whatsoever in its property and belongings.

"Fifth. It is the will of the parties hereto, Manuel Méndez Rodríguez, Jacinto Gómez Sierra, and Manuel García Fernández, all three in their own right, and the first named also in the capacity in which he appears, that the said partnership of González, Méndez & Co., of which they remain now the only interested partners, continue until the termination of the term fixed in the last extension, and that from and after this date the said partnership be considered as modified in the following manner and terms: 1. That Manuel García, instead of remaining an industrial partner according to the second clause of instrument number 85, of August 25, 1894, aforementioned, shall become a general and managing partner, with the right to sign the firm name and with the same powers granted the other two managing partners in the sixth clause of instrument number 167, also above mentioned, of September 21, 1891, by which said partnership was constituted, and contributing to the capital of the firm the sum of 6,084.60 *pesos,* special national currency, which represents the amount of his profits as an industrial partner, according to the last general balance, in accordance with the agreement made at the time he entered the firm as such industrial partner. 2. That the firm name that this company has heretofore had be eliminated, for the reason that the name of the deceased partner, González, can no longer figure therein, and that the name of the other managing partner be substituted therefor; it being understood, therefore, that the firm name under which said company will continue to do business from and after this date shall be that of Gómez, Méndez & Company."

By a later instrument of January 31, 1900, the commercial partnership of Gómez, Méndez & Co. was dissolved and declared in a state of liquidation.

With these antecedents, on January 29, 1901, Petrona del Carmen González Resto, assisted by her husband Pablo Delfín Cuesta, who had been appointed her guardian *ad litem,* brought an action against all the parties to the instrument of June 19, 1896, mentioned, alleging as facts that by the closed will of Domingo González, protocoled on March 30, 1895, she had been acknowledged as his natural daughter and appointed

the heir to one-half of his entire estate, consisting of his share as managing partner in all the belongings of the commercial partnership of González, Méndez & Co., doing business in Yabucoa, constituted by instrument of September 21, 1891, and extended first on August 9, 1893, and subsequently with modifications on August 25, 1894; that by said instrument of September 21, 1891, Domingo González contributed the sum of 48,620.87 *pesos* provincial currency, towards the constitution of the firm of González, Méndez & Co.; that when an inventory or general balance was made on July 17, 1895, of all the assets of said company, the net share of Domingo González was found to amount to 67,252.43 *pesos* in said provincial currency; that notwithstanding this positive and large profit Petrona Resto y Negrón, the mother of the plaintiff, by instrument executed in Yabucoa on June 19, 1896, sold all the rights of ownership of her daughter in all the property to the other partners of the said firm of González, Méndez & Co. for the very low price of 12,000 *pesos,* provincial currency; and that subsequently the firm of Gómez, Méndez & Co., the successor of González, Méndez & Co., was dissolved by instrument of January 31, 1900, the assets of the firm being divided among the partners; she cited as grounds of law sections 4 and 164 of the Civil Code, and alleged furthermore that prescription of actions does not run against minors until they reach their majority, and that a frivolous litigant must pay the costs, concluding with the prayer that notice of the complaint be served upon Petrona Resto, Manuel Méndez Rodríguez, Jacinto Gómez Sierra, Manuel García Fernández, María Rodríguez López, in her own right and on behalf of her minor children, José Méndez Rodríguez, and another son of the same name and surnames, Ceferino Méndez Rodríguez, Juan and María Méndez Rodríguez and Vicenta González Alonso, and that the instrument modifying the commercial partnership of González, Méndez & Co., and assigning actions

and rights, executed by the defendants on June 19, 1896, be declared null and void by final judgment, and that matters be restored to the condition in which they were before the execution of this instrument, and that, in accordance with the law, the commercial partnership existing before that date be liquidated, with the intervention of the legal representative of the plaintiff, as the heir of Domingo González, a managing partner, and that his net share be delivered to her after deduction of the amounts which he may have received, with legal interest on the amounts not received, and with the costs of the proceedings against the defendants.

To the complaint were attached certified copies of instrument No. 177, of September 21, 1891, relating to the constitution of the commercial partnership of González, Méndez & Co.; of No. 69, executed on March 30, 1895, relating to the filing in the protocol of the closed will of Domingo González; of No. 118, executed on June 19, 1896, involving the change in partnership of González, Méndez & Co., and assignment of rights and actions; and of No. 29, executed on January 31, 1900, relating to the dissolution and declaration in a state of liquidation of the partnership of González, Méndez & Co.; the letter of February 2, 1896, written to Petrona Resto, signed by Andrés Antelo; a certificate of the record of the baptism of the plaintiff, who was born on August 5, 1892, and another certificate of the record of the marriage of Petrona del Carmen González Resto to Pablo Delfín Cuesta y Tolentino, which took place on January 13, 1901.

Attorney Antonio Alvarez Nava, in answering the complaint on behalf of Vicenta González Alonso, contested it and maintained the legal value of the instrument of June 19, 1896, the annulment of which was sought, citing in support of his opposition as grounds of law articles 230 and 234 of the Code of Commerce, as the instrument referred to, which had as a consequence the liquidation of the share of a partner in a

commercial company, could be executed by Petrona Resto y Negrón on behalf of her daughter, without the necessity of the previous requisite of judicial authorization.

Attorney Leoncio García Valle, on behalf of Gómez, Méndez & Co., made similar opposition, basing his contentions on the same legal grounds as counsel for Vicenta González Alonso, pleading, in addition, the exception of prescription of the action brought, in accordance with Article 947 of the Code of Commerce.

Petrona Resto was declared in default by order of March 29, 1902, and the proceedings were continued in her default.

The fundamental facts in the complaint have been proved by the evidence submitted, as also that the commercial firm of González, Méndez & Co. was the owner of a number of rural estates recorded in its favor in the Registry of Property of Humacao; that the share of Domingo González in said estates was likewise recorded in said registry in favor of Vicenta González Alonso and Cármen González Resto, as acquired under the title of a testate inheritance, and that by virtue of the instrument of June 19, 1896, relating to the withdrawal of a partner with the assignment of rights and actions and modification of the partnership, the principal clauses of which are inserted, the estates recorded in the registry in favor of González, Méndez & Co. were recorded in the same registry in favor of Gómez, Méndez & Co.

The District Court of Humacao rendered judgment on April 18, 1903, the conclusions of law and adjudging portion of which reads as follows:

"1. By the instrument executed by Petrona Resto on behalf of her minor daughter, Petrona del Carmen González, the rights and actions of said minor in the Estate of Domingo González were assigned to the firm of González Méndez & Co., upon which the new purchasers modified the constitution of the partnership of González, Méndez & Co., for which reason the instrument embodied two contracts: One assign-

ing all personal property, chattels and real property in the firm belonging to the minor by paternal inheritance, and another modifying the partnership.

"2. The said contract of assignment is not a commercial act under the provisions of the Code of Commerce, nor does it partake of the nature of such, as determined in the second article of the said law, because it does not reveal the purpose of traffic and business by means of evolutions tending to the profit produced by the continuous movement of commercial supply and demand.

"3. Although under article 5 of the Code of Commerce, minors may continue, through their guardians, the business of their parents, the act of the sale of hereditary commercial property is directly contrary to the provisions of the said article, as it results in the discontinuation of the business in which the parent was engaged.

"4. Even though said assignment be given a commercial character, such assignment should be governed by the rules of the common law, on account of the Commercial Code not making any express provision to the contrary, according to article 50 thereof.

"5. Said instrument of June 19, 1896, cannot be given the character of a commercial instrument of liquidation, because it is not drawn in accordance with the provisions of articles 228, 230 and 232 of the Code of Commerce.

"6. In accordance with the provisions of article 164 of the Civil Code, promulgated in 1889, and of article 2010 of the Law of Civil Procedure in force, the mother of a minor cannot alienate the property of her daughter without previous judicial authorization.

"7. Acts executed in contravention of the provisions of the law are null, according to section 4 of the Civil Code.

"In view of the provisions of sections 1300, 1301, 1302, 1303, 1304, 1307 and 1308 of said Civil Code, we adjudge that we should declare, and we do declare, to be null in all the points referred to by the complainant, Petrona del Carmen González Resto, the instrument of withdrawal of a partner with the assignment of rights and actions and the modification of a commercial partnership, executed by Manuel Méndez Rodríguez in his own right and on behalf and as the attorney in fact of his mother, María Rodríguez López, and brothers, Juan and María Méndez Rodríguez, the former in her own name and on behalf of her minor children, Ceferino, José, and another José Méndez y Rodríguez, Jacinto Gómez Sierra and Manuel García Fernández, both in their own right; Petrona Resto y Negrón on behalf of her

minor daughter, Carmen González Resto, and Manuel Lomba Peña, on
behalf of and as the attorney-in-fact of Vicenta González y Alonso,
before Notary Marcelino Estebánez Naclares, in Yabucoa, on June
19, 1896; and as a consequence we adjudge the defendants, Petrona
Resto, Manuel Méndez Rodríguez, Jacinto Gómez Sierra, and Manuel
García Fernández, María Rodríguez López in her own right and on
behalf of her minor children, José Méndez Rodríguez and another
having the same name and surname, Ceferino Méndez Rodríguez, Juan
and María Méndez Rodríguez and Vicenta González y Alonso, as the
legitimate mother of Domingo González y González, to restore things
to the state in which they were at the time of the execution of said
public instrument, and that; in accordance with law, they liquidate
the commercial partnership of González, Méndez & Co. existing be-
fore that date, with the intervention of the present representative,
Pablo Delfín Cuesta y Tolentino, of his wife, the minor defendant and
heir of the partner, Domingo González y González, whose share shall
be delivered to her after deducting therefrom the sums received under
the contract annulled, plus legal interest, the difference to make up
his share, being paid her in addition to legal interest from the date of
the execution of the contract annulled. We further adjudge the
defendants to pay the costs of this litigation.''

From this judgment counsel for the members of the firm
of Gómez, Méndez & Co., that is to say, of all the defendants
with the exception of Vicenta González Alonso and Petrona
Resto, took an appeal, which was allowed, and which, after
the proper legal proceedings, is now pending the decision of
this Supreme Court, in which the appellants have been repre-
sented by Attorney Juan Hernández López, Cármen González
Resto by Attorney Rafael Tirado Verrier, and Vicenta Gon-
zález Alonso by Attorney Dámian Monserrat.

The legal question to be decided is whether the assignment
of the rights and actions of all kinds pertaining to Petrona
González Resto in the partnership of González, Méndez & Co.,
under the will of her deceased father, Domingo González, made
in favor of said firm without judicial authority, by public in-
strument of June 19, 1896, is valid or void in law, because
in the former case the modification of said partnership would

also be valid, and in the latter the modification thereof would also be void, on account of resting on an illegal basis.

Section 164 of the Civil Code, cited by the plaintiff in support of her complaint, provides as follows: "The father, or the mother in a proper case, cannot alienate the real property of the child, the usufruct or administration of which belongs to them, nor encumber the same, except for sufficient reasons of utility or necessity, and after authorization from the judge of the domicil, upon hearing the department of public prosecution, excepting the provisions which with regard to the effects of transfers, the mortgage law establishes;" and section 334 of said Code, in defining real property, makes express mention in subdivision 1, in regard to lands, and in subdivision 10, upon servitudes and other property rights in real estate.

The juridical entity of González, Méndez & Co. was undoubtedly the owner of real property, as this has been shown by the certificates of the record of the ownership of property of this character in its favor in the Registry of Property of Humacao; but this is not a legal reason for Domingo González, a member of said firm, to be considered a co-owner of such property, although he had an interest in the firm and could transfer said interest to another person with the consent of the other partners, according to article 143 of the Code of Commerce. This doctrine has been sanctioned by the Supreme Court of Spain by decisions of July 12, 1883, and February 23, 1884, which, although of a date prior to that on which the Code of Commerce now in force went into effect, are not opposed to, but are in harmony with, the legal provisions thereof; and if González was not a co-owner or participant in the ownership of the property of any kind belonging to said firm, it is obvious that he could not convey such co-ownership to his natural daughter and heir, Petrona, del Cármen González Resto.

Upon the death of Domingo González, on March 26, 1905, the firm of González, Méndez & Co. continued without any change with the heirs of said partner, Vicenta González and Petrona del Cármen González Resto, subject to the provisions of the articles of partnership, and, therefore, all the property which constituted the capital of the firm continued subject to the results of the business transactions theretofore made or which might be entered into thereafter in the name and for the account of said company, without it being possible to fix the share corresponding to the heirs of González on account of such share being subject to the contingencies of the liquidation, without which the common assets could not be divided.

As such liquidation and division were not made, the share of Petrona del Cármen González Resto in the firm of González, Méndez & Co. was not exactly defined or determined at the time of the execution of the instrument of June 19, 1896, and, therefore, on this date she was merely the owner of rights and actions the amount of which had been fixed by her, represented by her mother, Petrona Resto, and the other members of the firm of González, Méndez & Co., at a sum which they considered equitable, in view of the balance previously stricken, and taking into consideration the condition of the business of said firm.

Therefore, a contract was executed by said instrument involving the alienation of rights and actions by the legal representative of Petrona del Cármen González Resto and Vicenta González Alonso, to the other members of the firm of González, Méndez & Co., without it being possible to qualify such rights as rights of ownership or property rights in specific real property, and, therefore, as comprised within the provisions of article 164 of the Civil Code, which is in accord with article 205 of the Mortgage Law.

It is true that the law of Civil Procedure which went into effect in this Island in 1886, provides as follows by its article 2010:

"Judicial permission shall be necessary in order to alienate or encumber the property of minors or incapacitated persons which pertains to the following classes: 1. Real property; 2. Public securities and commercial paper of all kinds, whether made payable to bearer or order; 3. Rights of all kinds; 4. Jewelry, personal property, and precious objects which may be preserved without deterioration.". But this provision, which in its fullest extent affected not only the tutor and curator but also the father or the mother, in a proper case, was limited, as to the father and mother, by Article 164 of the Spanish Civil Code, extended to this Island by Royal Decree of July 31, 1899, to certain property; that is to say, to real property which includes, as has been stated, property rights of any kind which may affect it thus excluding the other property referred to in subdivisions 2, 3 and 4 of Article 2010 above cited.

That said section 164 of the Civil Code is to be so construed, is shown by its very text which, containing a prohibition as it does, cannot be construed in a broad sense, but only in a restricted sense, in accordance with the rule of legal hermeneutics *favorabilia sunt amplianda et odiosa restringenda,* this being further corroborated by another rule of construction *inlusio unius est exclusio alterius,* because it having been the purpose of the legislator to determine in Chapter III of Title VI of Book I, of the Civil Code, the effects of paternal authority with respect to the property of children, he would have established all the limitations which he might have considered proper, and would not have established only that made by section 164, when he could have reproduced all of article 2010 had he desired to extend the prohibition to alienate without judicial authority to all the property and rights enumerated in said section.

It is also to be noted that section 317 of the Civil Code provides as follows: "Emancipation qualifies the minor to control his person and property, as if of age; but, until he

attains his majority, the person emancipated cannot borrow money or encumber or sell real property without the consent of his or her father, and, in the absence of the latter, that of the mother, and, in the absence of both, without that of a guardian. Neither can he or she appear in court without the attendance of such persons.'' This provision, as will be noted, deprives an emancipated minor of the power of himself to encumber or sell real property which, as stated, includes property rights; but this prohibition does not extend to other kinds of property, this section, therefore, bearing a relation to section 164 in so far as the property and rights to which both refer are concerned. And let it not be said that section 164 of the Civil Code can be harmonized with article 2010 of the former Law of Civil Procedure, because the former imposes on the father or mother, in a proper case, the necessity of obtaining judicial authority for the alienation and encumbrance of the real property of a child of which they enjoy the usufruct or have the administration, and the latter imposes the same necessity for the alienation or encumbrance of other property in addition to the former. The legal provisions mentioned are not in harmony with each other but contradictory, and therefore the former being of a subsequent date repeals the latter which is of a prior date.

It is not permissible to allege in opposition to this doctrine the absence of an express declaration by the legislator, because in any case the repeal of section 1976 of the Civil Code of all provisions of law constituting the common civil law on all matters which are the subject of the former, would be sufficient to hold that the father or the mother was bound to conform to the provisions of the Code and not to those of the Law of Civil Procedure, to determine the effects of the parental authority with respect to the property of children.

We are of the opinion therefore that the instrument of June 19, 1896, by which Petrona Resto, as the representative of her minor daughter, Petrona del Cármen Resto, assigned

or sold to the commercial firm of González, Méndez & Co. all her present and future share in said firm as the heir of Domingo González, is valid, by reason of not being included in the prohibition established in section 164 of the Civil Code and that, therefore, Vicenta González acted with sufficient capacity to execute it, articles 50, 234, and 297 of the Commercial Code, invoked by the defendants who answered the complaint, not being considered applicable to the case, as the act of the assignment or alienation made by Petrona González on behalf of her daughter, is not commercial, and has therefore in itself a special entity distinct and independent of the liquidation of the said firm, which liquidation consists of the collection of the credits of the partnership, the satisfaction of the obligations previously contracted as they fall due, and the closing of pending transactions, according to article 228 of said Code of Commerce.

If the instrument of June 19, 1896, was valid, in so far as Petrona del Cármen González Resto as well as Vicenta González Alonso became separated thereunder from the commercial firm of González, Méndez & Co. by the transfer to said company of the interest they had therein, availing themselves of the right afforded by article 143 of the Code of Commerce, said instrument was also valid with relation to the modification of said partnership, because there is no legal reason upon which to base the annulment of such modification.

For the reasons stated, we believe that the complaint filed by Cármen González Resto, assisted by her husband, Pablo Delfín Cuesta, should be dismissed, judgment rendered in favor of all the defendants, and the judgment appealed from reversed, with the costs of the proceedings against the plaintiff.

*Reversed.*

Mr. Chief Justice Quiñones and Mr. Justice Figueras concurred.

Justices MacLeary and Wolf dissented.

DISSENTING OPINION OF MR. JUSTICE WOLF.

I feel myself obliged to dissent from the opinion of the majority of the court in this case. The facts and issues of law are sufficiently well presented by the *ponente.* There seems to be no doubt that the transfer or attempted transfer was not made by virtue of any of the provisions of the Code of Commerce; in other words, that no justification for the alienation of the rights of the minor in the property of the firm of González, Méndez & Co. is to be found in that Code. The necessary liquidation did not take place, as indicated by the court below in its third, fourth and fifth *Considerandos,* as well as by the majority opinion.

It is not disputed that the property of the society of González, Méndez y Ca. consisted mainly of real property. It is maintained however that what the minor possessed was not a real property right, but an interest in the society, and that the provisions of section 164 of the Civil Code are inapplicable. It is likewise and principally maintained that although section 2010 of the Code of Civil Procedure required judicial authority for the alienation of the species of property, the subject of this action, yet with respect to parents the said section 2010 was repealed by the later enactment of section 164.

It is practically conceded that unless the one was so repealed by the other, the judgment of the lower court ought to have been affirmed. The opinion of the majority of the court does not rely on any decision for its principal contention, and ignores the strong comments to the contrary made by the eminent commentators of each of the two codes, namely the Civil Code and the Code of Civil Procedure, in effect at the time of the transfer.

The general principles that govern the interpretation or repeal of statutes, being directed to determine the intent of the legislator, are not essentially different in Spanish countries from what they are in the United States. In both coun-

tries where it is asserted that a later statute by necessary implication repeals a former one the court will place the two statutes side by side to determine what inconsistency or repugnancy exists between them. That repeals by implication are not favored is a deduction from the reasoned experience of mankind. So much too may be inferred from the reasoning of the majority opinion, as well as that of the commentators on the two Codes, to whom I have referred.

It being maintained that the special provisions contained in section 164 of the Civil Code repealed, with respect to fathers, the general provisions of sections 2010 et seq. of the Code of Civil Procedure (which sections by their terms include parents) the principle most applicable is that contained on page 743 of volume 26 of the second edition of the American and English Encyclopedia of Law, namely: "A general act will be repealed pro tanto by a subsequent special act when the two acts cannot stand together; but if on a reasonable construction the two acts are not inconsistent and may stand together, the general act is not repealed by the later special act." Indeed this is no more than the particular application of the principle which governs the repeal of statutes in general.

The Supreme Court of the United States in various decisions has stated that the correct guide is as follows:

"To induce the repeal of a statute by the implication of inconsistency with a later statute there must be such a positive repugnancy between the two statutes that they cannot stand together." (Arthur v. Homer, 96 U. S., 140; McCool v. Smith, 1 Black., 459; Wood v. United States, 16 Pet., 342; United States v. Tynen, 11 Wall., 88.)

Placing then these two statutes side by side, I am unable to see any conflict between them. As intimated before, sections 2010 et seq., are not restricted to any particular class of persons, natural guardians or otherwise, but nevertheless plainly and expressly include parents. These sections re-

quire judicial authorization for the alienation of four differ-
ent classes of property, and section 164 under discussion ex-
acts the same authority for the first of these classes with
particular reference to parents.' What is there repugnant or
inconsistent in the legislator emphasizing the necessity of
judicial authorization in the case of any particular alienation
of real property? The learned commentator of the Civil
Code, Q. Mucius Scaevola takes exactly the opposite view
from the majority of the court. He says in his commen-
taries on section 164:

"The Code in this article, in requiring judicial authorization,
speaks only of the real property belonging to the children. Does the
silence in regard to the other property mean that such requisite is not
necessary concerning the same? Such omission would have to be so
understood if there did not exist a special precept supplying the
same, such as article 2011 (2010 for Porto Rico) of the aforesaid law
of civil procedure, which extends the necessity of judicial permission
to the alienation of encumbrances of public effects and value of all
kinds nominative or payable to the bearer, rights of all kinds, jewelry,
furniture and precious articles which can be preserved without de-
terioration.

"Is this precept to be understood as having been repealed on ac-
count of the silence of the Code? By no means. The latter is a sub-
stantive and civil law, the publication of which can only affect laws
of the same character, and not those of a different nature; that is,
the adjective laws, or laws relating to proceedings, such as the law
of procedure. Besides, the final repealing provision of the Code
causes only those laws to lose their force which constituted the com-
mon civil law, and that in matters which are the object of the same;
which repeal, therefore, cannot reach a law that, like the one of which
we are speaking, does not form part of the common civil law, and
still less in a matter which is not an object of the Code, and which,
on the contrary, supplies the lack in the same. As we understand it,
the precept of section 164 is not a modification of the provisions of
the law of procedure, but a ratification, since even though the said
precept had not been established, the judicial authorization would
still be necessary in order to alienate or encumber property of the
children by virtue of the fact that it is so required by a law the

essence of which has not been altered by the publication of the Code. In consequence of this, the alienations or encumbrances of the aforesaid property of the children must be effected after having previously obtained judicial authorization, etc.''

Likewise Manresa in his comments on articles 2010 *et seq.,* says:

"Property of Minors Who Are Under Paternal Authority.— Article 164 of the Civil Code reads as follows (citing said article). To this case are applicable the present article and the four following ones, in so far as they refer to parents. Although the Code only mentions real property, we believe that the necessity of judicial authorization extends to the other properties named in the present Article 2011 (2010 in Porto Rico), as well as to the extinction of property rights in real property mentioned in Article 2030 (2029 in Porto Rico), for the reason that its provisions are complementary to that of the Code, and there is no provision whatever in the latter by which it is prohibited.''

Sánchez Román, cited hereafter, arrives at the same conclusion. That he regarded both sections as existing with respect to the *patria potestas* appears from the dictum of the Register of Property of Andújar reported in the sentence of the *Dirección General de los Registros Civil y de la Propiedad y del Notariado.* (*Jurisprudencia del Código Civil Vol. 2 of 1894.*)

All the available authorities are against the proposition that, except in the case of reality, it is unnecessary to seek judicial license to alienate or encumber the property of minors. The most that might be said is that, while the Code of Civil Procedure made judicial authority formally necessary, the Civil Code made it substantially necessary in certain respects.

If I correctly understand the reasoning of the court I am in accord with it when it says, or seems to say, that section 164 in so far as it contains a prohibition may not be extended. It is not urged that this section may be interpreted to prohibit other alienations of property than those embraced in its

terms. But I cannot assent to the application made of the rule of *expressio unius est exclusio alterius* to the case at bar. A case which shows an application of the rule *expressio unius* etc. is the case of *Wood* v. *The United States* cited above.

In attempting to apply this maxim to the repeal of statutes by implication it would seem that there must be some incongruity, inconsistency, or repugnancy between the thing included and the thing excluded or at least some relation between them (other than merely being in *pari materia*) which would make improbable, if not impossible, their co-existence as law. There must be something from which to gather an intention to repeal. It is not enough to declare that all the law upon the alienation of property of minors not emancipated is contained in a certain chapter.

Nevertheless, the *ponente* does assert that it was the intent of the legislator by enacting Chapter III of Title VII, Book I "to determine the effect of the parental authority with regard to the property of the children." Supposing this to be the proper exposition of the law, one is immediately led into a serious difficulty, especially if the provisions of section 2010 *et seq.* of the Law of Procedure have been repealed *pro tanto*. The said Chapter III may be most carefully scrutinized without revealing any grant of power over the property of their children to the parents, beyond the power of administration and usufruct and the implied power of alienation of real property contained in section 164. It is here that the rule of *expressio unius,* etc., would seem to be applicable. Here there is no question of repeal. All the law on the effect of the *patria potestas* over the property of their children, it is said, is expressed by the said Chapter III. As administration and usufruct are included other powers of domination excepting those conferred by section 164, are excluded. Unless the Civil Code of Procedure will supply the lack there is nothing in the Civil Code authorizing the alienation of any property beyond that mentioned in section 164.

To this effect Sánchez Román (*Tomo Quinto, Volúmen 2* of the second edition, page 1149) in discussing the alienation of the property of minors, says:

"In regard to the alienation of real estate, although the Code treats only of that of real property, it is not to be doubted that the doctrine of the said Title II, Book III, of the Law of Civil Procedure, and that of the paragraphs 2 and 4 of section 2011, should be considered as subsistent and applicable with regard to chattels, effects and valuables, rights and jewels, which must be considered as subject to the proceeding of judicial authorization for their alienation, in those cases where they belong to persons under twenty-three years of age, whatever the legal situation may be in which they may find themselves, whether they be free from the paternal authority or subject to the same, inasmuch as the law says only 'minors;' and were it otherwise, it would be necessary for the Code to contain a section which authorized the father to effect the alienation himself or to accomplish the same by means of other proceedings than those which the Law of Civil Procedure has established in the aforesaid title; especially as, if the Code has considered the guarantees of proof of the necessity and utility, judicial authorization and hearing of the prosecuting attorney as indispensable for the alienation of real estate, there is no reason whatever (on the contrary, because of the value or their importance, which may be greater) why any one of the aforesaid guarantees should be omitted in the alienation of the same, and it would be very dangerous and risky to choose such construction, in view of the silence of the text of the Code, and disregarding those of the Law of Civil Procedure."

Nor is there any presumption in favor of the *patria potestas* by reason of any silence in the Code. The almost universal tendency in every country in applying the civil law has been to limit the *patria potestas,* and especially with respect to the property of children. Scaevola in his opening comment on Title VII says:

"*Of the Paternal Authority.*—Of the *patria potestas,* a peculiar juridical institution of the Roman law, only the name is preserved. Its essential qualities, its characteristic requisites, have disappeared;

some have been lost in the course of time and others blotted out by the legislator on account of their being in conflict with the ideas prevailing in society at the time. Our Code reflects said transformation.''

The champion of the *patria potestas* may then eventually be compelled to resort to section 2010 in order to find any authority for the alienation of children's property when the proposed subject of the alienation is other than real estate.

When it is considered that the actual property in question is real property belonging to the society, the reason for the rule established in section 164 as well as in sections 2010 *et seq.* will be very thoroughly vindicated. The complainant asks that the *status quo* be restored, and while this may cause some disturbance in the affairs of the society, it is not an inequitable demand.

For the reasons given I am of the opinion that the judgment of the court below should have been affirmed.

### DISSENTING OPINION OF MR. JUSTICE MACLEARY.

Thinking, as I do, that section 164 of the Civil Code and section 2010 of the Code of Civil Procedure are both in force, and that they are consistent with each other, I dissent from the views entertained by a majority of the court, and cannot concur in the judgment rendered.

My colleague Mr. Justice Wolf having filed an elaborate dissenting opinion in which, on its main points I concur, it is unnecessary for me to say more in regard to the matter.